

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

XXXJ&IPAX(IBJX%GMEIDGIXIX
ATTORNEY GENERAL

Hon. W. C. Graves, Chairman
Senate Committee on
Commerce and Manufactures
Austin, Texas

Opinion No. O-3180

Re: Constitutionality of
Senate Bill 9, (Fair Trade
Act).

Dear Sir:

Your letter of February 17, 1941, submits to us a copy of Senate Bill No. 9, and requests our opinion upon the constitutionality thereof.

Senate Bill No. 9, the so-called "Fair Trade Act" reads as follows:

"Senate Bill No. 9            "By SPEARS

" A BILL

"TO BE ENTITLED

"AN ACT to protect trade-mark owners, distributors and the general public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand, or name, and to facilitate fair trade; defining certain terms; providing a savings clause; amending all laws and parts of laws inconsistent herewith; and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. That no contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand, or name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Texas, by reason of any of the following provisions, which may be contained in such contract:

"1. That the buyer will not resell such commodity, except at the price stipulated by the Vendor.

"2. That wilfully and knowingly offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this Act, whether the person so offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.

"3. That the Vendee or producer require any dealer to whom he may resell such commodity, to agree that he will not, in turn resell, except at the price stipulated by such Vendor or by such Vendee.

"Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may be resold without reference to such agreement in the following cases:

"1. In closing out the owner's stock for the purpose of discontinuing any such commodity, and notice thereof is given to the public;

"2. When goods are damaged or deteriorated in quality and notice thereof is given to the public;

"3. By any officer acting under the orders of any court.

"Section 2. This Act shall not apply to any contract or agreement between the producers or between wholesalers or between retailers, as to sale or resale prices.

"Section 3. The following terms, as used in the Act, are hereby defined as follows:

"'Producer' means grower, baker, maker, manufacturer, or publisher.

"'Commodity' means any subject of commerce.

"Section 4. If any provision of this Act is declared unconstitutional, it is the intent of the Legislature that the remaining portions thereof shall not be affected, but that such remaining portions remain in full force and effect.

"Section 5. All laws or parts of laws inconsistent herewith are hereby amended to the extent of such inconsistency.

"Section 6. This Act may be known and cited as the 'Fair Trade Act.'

"Section 7. The fact that the State has no law to regulate unfair trade practices creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

In Conference Opinion No. 3066, we held that H.B. No. 231, the "Fair Trade Act" passed by the 46th Legislature, conflicted with our anti-trust laws and that, since Section 7 of that Act provided that the Act should be null and void if it conflicted with the anti-trust laws of the State, H. B. No. 231 was, by its own terms, of no force and effect. Because of this holding, it was not necessary that we should, and we therefore did not, express in that opinion our views respecting the constitutionality of that Act.

Senate Bill No. 9, pending before the 47th Legislature, is very similar to H. B. No. 231, 46th Legislature, but contains no provision that S.B. No. 9 shall be null and void if in conflict with our anti-trust laws. On the contrary, Section 5 of S.B. No. 9 expresses clearly the legislative intent that the provisions of the "Fair Trade Act" shall operate to amend and supersede the anti-trust laws to the extent that the "Fair Trade Act" conflicts with the anti-trust laws.

Under the anti-trust laws of this State, the agreements which are mentioned in Senate Bill No. 9 are illegal and void. (See our Conference Opinion No. 3066, copy of which is hereto attached). The purpose and effect of Senate Bill No. 9 is to legalize in this State the type of contract fixing resale prices—"vertical" price fixing - described in the bill. If the bill becomes a law, the anti-trust laws of this State will, by virtue thereof, be repealed to the extent that such laws condemn the "vertical" price fixing agreements described in Senate Bill No. 9. Thus, only questions respecting the constitutionality of S. B. No. 9 are presented for our consideration.

Our anti-trust laws constitute a legislative determination that agreements and combinations having for their purpose or affecting by their acts the fixing of prices upon the subjects of commerce, though manifestly beneficial to that portion of the public engaged in the selling of such commodities who are parties

to such agreements and combinations, are obnoxious and harmful to the interest of the public generally. This legislative determination upon which the anti-trust laws are predicated, however, is subject to review by the Legislature. There is no provision of our Constitution which prevents the Legislature from modifying or revoking the policy embodied in the anti-trust laws. Hence, whether these laws shall be repealed in whole or in part presents purely a question for the Legislature, to be solved by the Legislature in such manner as appears to it to be in the interest of the general public.

The character of this problem as purely legislative is emphasized by the following quotation from our Conference Opinion No. 3066:

"It is contended by advocates of such legislation that the manufacturer of trade-marked or branded articles of commerce has a vital interest in the good will engendered by the sale of such goods with his brand or trade-mark upon them; that price-cutting in such goods by retailers to whom the manufacturer or distributor has sold them results in damage to the manufacturer's good will; that the damage thus sustained increases the manufacturer's costs and impairs his ability to market his goods and results in increased prices for such goods to the buying public. (7 A.L.R. 453-456). It is argued that 'vertical' price-fixing--that is, price-fixing on a branded commodity in competition with other branded commodities of a similar class, by agreement between the manufacturer or the distributor and the dealers in such commodity, as to the prices for which his commodity alone may be sold, is beneficial to the public generally; whereas, it is admitted that 'horizontal' price-fixing agreements--that is, price-fixing between manufacturers or dealers in similar commodities normally in competition each with the other, is decidedly inimical to the public interest.

"On the contrary, the arguments against such price-fixing are phrased as follows by the Federal Trade Commission report for the fiscal year ending June 30, 1918:

"'1. The power to fix prices will usually be abused by the allowance of too large profits;

"'2. Resale price maintenance protects and encourages inefficient jobbers and prevents elimination in the over-crowded field of middlemen;

"'3. It tends to secure cooperation of dealers and to prejudice them against brands whose prices are not fixed;

"'4. It forces other dealers to attempt the control of prices;

"'5. It encourages general standardization of prices and elimination of normal competition among dealers; and,

"'6. It forces the ultimate consumer to pay higher prices and leaves him no bargaining power with respect to the article concerned.' (7 A.L.R. 458)

"It is, of course, the prerogative of the Legislature, in the exercise of its constitutional authority to originate such legislation as this, and of the Governor, in the exercise of his constitutional authority to veto or approve, to balance these arguments and considerations the one against the other, determine their validity, and to take such action as, to them, appears to be in the interest of the public generally. In the absence of any constitutional inhibitions neither this Department nor the courts would have any rightful concern with the question of public policy involved, since the determination of that question of public policy is governed by findings of fact, and the power to make such findings of fact is by our Constitution exclusively vested in the Legislature and in the Chief Executive of the State."

Under our system of government, the people have vested a large discretion in the Legislature and in the Governor to determine the policies of the State. Except as this discretion may be limited by plain constitutional provisions, the Legislature's action, unless vetoed by the Governor, is final. Upon these questions of policy, the Constitution vests no authority in the Judiciary to nullify a law simply because, in the opinion of the Judiciary, the Legislature has wrongly determined the question of policy involved and passed a law which is obnoxious to, rather than in the furtherance of, the interest of the public generally. In such cases, the protection of the people is not vouchsafed by the Constitution, but lies "in the character of those entrusted with the power of legislation and in the integrity and firmness of the chief executive of the State." (DeHaven, J, in Daggett v. Colgan (California), 14 L.R.A. 474)

Acts identical to Senate Bill No. 9 have been upheld in many other states and by the Supreme Court of the United States,

as within the broad policy making power of the Legislature. In these cases, every question of constitutionality, under State and Federal Constitutions, which occurs to us, has been resolved in favor of the validity of the Act. (See cases collected in Annotations: 103 A.L.R. 1342; 125 A.L.R. 1336) No useful purpose can be served by extensive quotations from these cases. It suffices to say that, under these authorities, we are of the opinion that no provision of the State or Federal Constitutions renders Senate Bill No. 9 invalid.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ R. W. Fairchild
Richard W. Fairchild
Assistant

APPROVED: MAR 6, 1941
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

RWF:EP:wb
ENCLOSURE

This opinion considered and approved in limited conference.